## JEROME B. KATZ *v.* EVA KATZ

[No. 401, September Term, 1978.]

*Decided January 11, 1979.*

The cause was argued before GILBERT, C. J., and COUCH and MACDANIEL, JJ.

*Stanley R. Jacobs* for appellant.

*Howard L. Stern* for appellee.

MACDANIEL, J., delivered the opinion of the Court.

On June 5, 1972, Jerome B. Katz, the appellant, and Eva Katz, the appellee, were awarded a divorce in the State of

Virginia. The decree required the appellant to pay $275 every two weeks in support of the three minor children "until they are emancipated." At that time, the children were 14, 11, and 9 years of age. Effective July 1, 1972, the Virginia General Assembly lowered the age of majority from 21 years to 18 years.[1]

On January 2, 1976, the appellee filed a petition in the Circuit Court for Montgomery County for an increase in the amount of child support.[2] On November 20, 1976, the appellant filed a petition in the same court to decrease the amount of child support because one of the three children was then over 18 years of age.

A hearing on the merits was held on March 17, 1978. The evidence showed that there had been no written separation agreement and that, at the time of the divorce decree, the appellant and appellee had conflicting understandings as to whether the appellant's financial responsibility ended when the children reached 18 or 21 years. Evidence was also introduced regarding the financial situation of the parties.

On April 10, 1978, the chancellor filed a Memorandum and Order increasing the amount of child support and requiring

---

1. The Code of Virginia provides:

"§ 1-13.42. *Age of majority.* — (a) Unless a different meaning appears from the context:

(1) The words *'infant,' 'child,' 'minor,' 'juvenile'* or any combination thereof shall be construed to mean a person under eighteen years of age.

(2) When used to mean or include disability because of age, the term *'person under disability'* shall be construed to mean or include a person under eighteen years of age.

(3) The word *'adult'* shall be construed to mean a person eighteen years of age or over.

(4) The word *'infancy'* shall be construed to mean the state of being under eighteen years of age.

(b) For the purposes of all laws of the Commonwealth including common law, case law and statutory law, unless an exception is specifically provided in this Code, a person shall be an adult, shall be of full age and shall reach the age of majority when he becomes eighteen years of age. (1972, cc. 824, 825.)"

2. Because both parties are residents of Montgomery County, jurisdiction of the Circuit Court for Montgomery County was properly invoked.

the appellant to pay the increased amount "until the youngest child is emancipated or until further order." At the time of the order, the children were 20, 18 and 15 years respectively. The chancellor based his order on the following understanding of Virginia law:

> "In *Paul v. Paul,* 214 Va. 651, 203 S.E.2d 123 (1974), the Supreme Court of Virginia held that the words 'otherwise emancipated' found in a property settlement agreement entered into prior to July 1, 1972 which required a former husband to support his three children until they were 21 or 'otherwise emancipated' did not include emancipation by law, and that the reduction in age of majority from 21 to 18 did not effect [sic] his obligation to pay child support until his children reached the age of 21. This Court believes that the word 'emancipated' found in a divorce decree should be given the same interpretation."

The chancellor also stated:

> ". . . a unitary child support payment including more than one child is not severable and should not be mechanically reduced as each child is emancipated."

The appellant contends that the chancellor incorrectly interpreted the law applicable to this case, and we agree.

I

Both parties concede that Virginia law must be applied in the interpretation of the divorce decree and the determination of whether the appellant's financial responsibility ends when his children reach 18 or 21.

The Virginia courts, to date, have not directly addressed the issue now before this Court, that is, the effect of legislation lowering the age of emancipation to 18 on the interpretation of an earlier divorce decree which provides for child support payments until emancipation and which does *not* incorporate any settlement agreement between the parties. We believe,

however, that language in related Virginia cases, coupled with the Virginia Supreme Court's approval of the approach taken by the courts in North Carolina, indicates that a parent's duty to make support payments, under the above facts, terminates when a child reaches 18.[3]

In *Eaton v. Eaton,* 215 Va. 824, 826, 213 S.E.2d 789, 791 (1975), the Supreme Court of Virginia stated:

> "Jurisdiction in divorce suits is controlled entirely by statute. *Jackson v. Jackson,* 211 Va. 718, 719, 180 S.E.2d 500 (1971). Our divorce laws give the court authority to provide for the maintenance and support of 'minor children.' Code §§ 20-103, -107."

The *Eaton* case involved the interpretation of a child support order, which did not incorporate any previous settlement agreement, in light of the legislation lowering the age of emancipation. The support order did not pre-date the new legislation.[4] The Court said: ". . . the divorce court's jurisdiction is eliminated *ipso facto* when the child reaches his majority." *Id.* at 827, 213 S.E.2d at 792. Because the divorce court had no jurisdiction, it could not make further provision for the child.

In *Meredith v. Meredith,* 216 Va. 636, 222 S.E.2d 511 (1976), the Virginia Court addressed the question of the effect of the new legislation on a divorce decree pre-dating the legislation. That decree incorporated a stipulation and agreement between the parties and provided for support ". . . until such

---

**3.** The termination of the duty to make child support payments is subject to the limitation set forth in Section II of this opinion, below.

**4.** Although the original divorce decree pre-dated the new legislation, a new support order, subsequent to the new legislation, had been entered. The Court said:

> "This order was a 'new decree' for child support. Code § 20-108. This order, and not the prior order of March, 1972, which was entered before the change in law, controlled the father's duty to pay support." Eaton v. Eaton, 215 Va. 824, 826, 213 S.E.2d 789, 791 (1975).

child shall reach his majority . . . ." The Court held that the duty to support ended when the child reached 18 and said,

". . . we conclude that the parties intended not to extend Meredith's duty of child support beyond the period within which, *in the absence of an agreement,* he would have been liable under Virginia law for such support." (Emphasis added.) 216 Va. at 638, 222 S.E.2d at 512.

Although the issue was not directly before it, the Court implied that, in the absence of a support agreement specifying otherwise, the effect of the new legislation on earlier divorce decrees would be to stop the duty to provide financial support when a child reaches 18. To the same effect is *Mack v. Mack,* 217 Va. 534, 537, 229 S.E.2d 895, 897 (1976), in which the Court explained the result as follows:

". . . minority is a legal status subject to change by the legislature rather than a vested right . . . ."

The Court in *Meredith, supra,* approved of the North Carolina Supreme Court's approach to the problem in *Shoaf v. Shoaf,* 282 N. C. 287, 192 S.E.2d 299 (1972), a case practically identical, factually, to the one now before this Court. It involved the interpretation of a consent judgment for child support which was not preceded by a settlement agreement. Of the *Shoaf* case, the Virginia Court said:

"There, child support payments were required until the child reached his majority. Subsequently, the age of majority was lowered from 21 to 18. The North Carolina Supreme Court held that majority or minority is a status rather than a vested right and is subject to change by the legislature, and that the *court had no power* to require child support beyond the age of 18, the age precisely fixed by law for the emancipation of children and the termination of parental liability for their support. (Emphasis added.) 216 Va. at 638, 222 S.E.2d at 512.

In a subsequent North Carolina case, *Cason v. Cason,* N. C., 247 S.E.2d 673, 676 (1978), (which is relevant because of

the approval which the Virginia Court has expressed of the North Carolina approach in *Shoaf, supra),* the Court said:

> "If the legislature had intended to continue pre-existing child support orders beyond the reduced age of majority (18), it would have been very simple to do so. Certainly, the effect of the change in the age of majority upon the hundreds of existing child support decrees or orders was not overlooked. The failure to *specifically* refer to existing obligations for child support under court orders is persuasive that no intent existed to legislate as to the effect of the change in the age of majority on such child support obligations."

In light of the above, the Virginia case of *Paul v. Paul,* 214 Va. 651, 203 S.E.2d 123 (1974), relied upon by the chancellor below, is inapposite. In that case the divorce decree incorporated a property settlement agreement which, according to the Court, clearly bound the parent to support his children beyond the age of legal emancipation. As the above cases make clear, however, when there is no agreement clearly binding the parent, a new statutory age of emancipation will terminate the parent's duty to support at that earlier age.

We hold, therefore, that under Virginia law, the effect of a statute changing the age of emancipation, or majority, from 21 to 18 upon a duty under a divorce decree pre-dating the new law to provide support "until emancipation" is to terminate the duty at the new age of emancipation, subject to the limitation in Section II, below.

## II

The appellant argues, next, that the chancellor erred in ruling that the unitary child support payment must continue until the youngest child is emancipated. We agree.

The recent Maryland case of *Becker v. Becker,* 39 Md. App. 630, 387 A. 2d 317 (1978), addressed the question of the

divisibility of unitary child support awards. In that case, we held that there could be no *automatic* pro rata reduction in payments based upon one child's attaining the age of majority. We said:

". . . [the] appellant's obligation to pay child support as provided for in the 1971 divorce decree was not automatically affected by the elder child's having attained his majority. While the elder child's having attained his majority may have been grounds, upon proper application by appellant for an order from the circuit court modifying the 1971 decree, appellant made no such application." 39 Md. App. at 634, 387 A. 2d at 320.

In the case now before this Court, however, there was a proper application to the circuit court by the appellant for a reduction in child support because of emancipation of two of the children. We hold that the chancellor below should have considered the possibility of a reduction in child support payments because of the termination of the father's duty to support two of the three children. In determining what amount should now be paid by the father, he should apply the criteria set forth in *Becker, supra.*

> *Judgment reversed.*
> *Case remanded for further proceedings consistent with this opinion.*
> *Costs to be paid by appellee.*